# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE HIGDON,<br><br>　　　　　　　Plaintiff,<br>vs.<br>RAYMOND E. MABUS, SECRETARY, DEPARTMENT OF THE NAVY,<br><br>　　　　　　　Defendant. | CASE NO. 12CV1657-GPC(MDD)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Dkt. No. 21.] |

Before the Court is Defendant Raymond E. Mabus, Secretary of the Navy's motion for partial summary judgment. (Dkt. No. 21.) An opposition was filed by Plaintiff Stephanie Higdon on January 17, 2014. (Dkt. No. 23.) A reply was filed on January 31, 2014. (Dkt. No. 24.) Based on the briefs, supporting documentation, and the applicable law, the Court GRANTS Defendant's motion for partial summary judgment.[1]

/ / / /

---

[1] Plaintiff argues that the Court should dismiss Defendant's motion for summary judgment for failing to comply with the undersigned judge's chamber's rules requiring that all motions for summary judgment be accompanied by a separate statement of undisputed material facts which Defendant failed to file. While Defendant failed to comply with the Court's chamber rules, the Court exercises its discretion and declines to dismiss Defendant's motion for summary judgment. See Miranda v. S. Pac. Transp. Co., 710 F.2d 516, 521 (9th Cir.1983) ("District courts have broad discretion in interpreting and applying their local rules.").

**Factual Background**

The parties do not dispute the allegations in the Complaint or in the record. On May 25, 2008, Defendant hired Plaintiff as a GS-0802-08 Engineering Technician ("ET"), in the Facilities Management Department ("FMD") at Naval Hospital Camp Pendleton. (Dkt. No. 1, Compl. at ¶ 5.) Her first level supervisor was Assistant Department Head Ventura Vidaurri. (Id.; Dkt. No. 21-2, D's Notice of Lodgment ("NOL"), Ex. 3.) Department Head Michael A. Johnson was Vidaurri's first level supervisor and Plaintiff's second level supervisor. (Dkt. No. 21-2, NOL, Ex. 4.)

Plaintiff claims that from the first day of her employment, Defendant assigned her administrative duties that male ETs did not perform, such as answering phones, and denied her training that her male coworkers received. (Dkt. No. 1, Compl. ¶ 5.) She received no appropriate training in an ET position. (Id.)

Sometime prior to June 25, 2008, Defendant denied Plaintiff's request for an Alternate Work Schedule ("AWS"). (Id. ¶ 6.) She filed a union grievance regarding the denial. (Id.) On June 25, 2008, Johnson and Vidaurri "confronted" her regarding this grievance at a meeting. (Id.; Dkt. No. 21-2, NOL, Ex. 1 at USA 0005.) At that meeting, Defendant reassigned her to the hospital's Reprographics Department, where she worked for the next eight months on duties outside her ET position. (Dkt. No. 1, Compl. ¶ 6; Dkt. No. 21-2, NOL, Ex. 1 at USA 0005.)

At the end of January 2009, Defendant informed Plaintiff that she would be returning to the FMD, effective February 2, 2009. (Dkt. No. 1, Compl. ¶ 7; Dkt. No. 21-2, NOL, Ex. 1 at USA 0005.) On February 2, 2009, Defendant assigned Plaintiff as a dispatcher in the FMD's Transportation Division, a GS-03 position. (Dkt. No. 1, Compl. ¶ 8; Dkt. No. 21-2, NOL, Ex. 1 at USA 0005.) In that assignment, she shared an office with four other employees. (Dkt. No. 1, Compl. ¶ 8; Dkt. No. 21-2, NOL, Ex. 1 at USA 0005.) Plaintiff's male counterparts were given their own offices and appropriate training. (Dkt. No. 1, Compl. ¶ 8; Dkt. No. 21-2, NOL, Ex. 1 at USA 0005.) She did not perform duties associated with her GS-0802 position as an

Engineering Technician. (Dkt. No. 1, Compl. ¶ 8; Dkt. No. 21-2, NOL, Ex. 1 at USA 0005.) While in the Transportation Department, she was also given part time duties of ordering materials which was what she was originally hired to do as an ET. (Dkt. No. 1, Compl. ¶ 8.)

On April 21, 2009, Vidaurri told that Plaintiff that she would not be promoted to GS-09 in May 2009, because she had not worked as an ET for the past year and had not accomplished any measurable work to warrant her promotion to GS-09. (Dkt. No. 1, Compl. ¶ 9; Dkt. No. 21-2, NOL, Ex. 1 at USA 0005; Dkt. No. 21-2, NOL, Ex. 7 at USA 0033.)

Around May 6, 2009, Plaintiff contacted the EEO office concerning these issues. (Dkt. No. 1, Compl. ¶ 10.) Around August 4, 2009, an EEO Counselor interviewed Vidaurri concerning the EEO Complaint. (Id.) Around August 18, 2009, Plaintiff filed a formal EEO complaint. (Id.) Around October 8, 2009, the Captain at the Naval Hospital signed the notice of acceptance of Plaintiff's EEO complaint. (Id.; Dkt. No. 23-2, Zielinski Decl., Ex. B.) She was placed on a training plan to facilitate her eventual promotion. (Dkt. No. 21-2, NOL, Ex. 7, Lisa Childress Aff., at USA 0033.)

Around October 8, 2009, when the Captain of the Naval Hospital accepted Plaintiff's EEO complaint, Vidaurri told her that her credit card had been put on hold due to numerous mistakes associated with her purchase card folder.[2] (Dkt. No. 21-2, NOL, Ex. 8 at USA 0042.) On October 15, 2009, Vidaurri told Plaintiff that her computer and Internet usage logs would be reviewed to determine how much time she was devoting to the facility purchasing program. (Dkt. No. 1, Compl. ¶ 10; Dkt. No. 21-2, NOL, Ex. 3, Vidaurri Aff. at USA 0015; Dkt. No. 21-2, NOL, Ex. 7 at USA 0033; Dkt. No. 21-2, NOL, Ex. 8, Higdon Aff. at USA 0042; Dkt. No. 21-2, Dkt. No. 21-2, NOL, Ex. 21, EEOC Decision at USA 0129-0130.) Plaintiff concedes using her computer for unauthorized purposes. (Dkt. No. 21-2, NOL, Ex. 21 at USA 0133.) No

---

[2] While this incident is not alleged in the Complaint, in its reply, Defendant does not dispute this as an incident to support Plaintiff's claim. Moreover, this incident is related to the review of Plaintiff's computer and Internet usage.

discipline or any other repercussion arose out of the review. (Dkt. No. 21-2, NOL, Ex. 21 at USA 0132.) The EEOC concluded that Plaintiff failed to establish a prima facie case of a discriminatory hostile work environment based on gender and retaliatory discrimination. (Id. at USA 00143.) Plaintiff voluntarily retired in 2011 after many consecutive months of sick leave, annual leave, AWOL and leave without pay. (Dkt. No. 21-2, NOL, Ex. 23, Navy Decision on 2011 EEO Claim at USA 0157-0159.)

In her complaint, Plaintiff alleges causes of action for hostile work environment based on gender and retaliation for prior EEO activity under Title VII of the Civil Rights Act of 1964 ("Title VII"). Specifically, Plaintiff asserts the following acts of gender discrimination and retaliation: 1) confrontation by the Department Head and Assistant Department Head because of her Union grievance and being denied AWS on June 25, 2008; 2) assignment to Reprographics on June 25, 2009; 3) upon returning to Facilities Management in February 2, 2009, assigned to work as a dispatcher for the Transportation Office; 4) informed that she would not be promoted to GS-0802-09 in May 2009 a year after her employment began;[3] 5) being forced to share an office as a dispatcher with four other employees while all the male GS-0802 Engineering Technicians had their own offices; 6) informed by Vidaurri, on October 9, 2009 that her credit card would be put on hold, and informed on October 15, 2009, that her computer and Internet usage would be reviewed to determine the amount of effort directed toward the DMLSS purchasing program. She also alleges constructive discharge. Defendant moves for summary judgment on all allegations except for the failure to promote based on discrimination.

## Discussion

**A.    Legal Standard on Summary Judgment Motion**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just,

---

[3] Defendant does not move for summary judgment on the failure to promote allegation.

speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp., 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. Id. at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of

fact. Anderson, 477 U.S. at 255.

**B.     Exhaustion**

Defendant contends that Plaintiff has failed to exhaust her administrative remedies as to all incidents occurring before March 22, 2009, and therefore these allegations are time barred. Defendant admits that the incidents that are timely are the failure to promote and review of her computer data and usage by her supervisor. In response, Plaintiff asserts that Defendant waived its right to timeliness when it accepted and investigated Plaintiff's allegations including those occurring before March 22, 2009.

A federal employee must first exhaust her administrative remedies before seeking relief in federal court. B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1099 (9th Cir. 2002); EEOC v. Famer Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994). Under the Title VII statutory and regulatory scheme, a federal employee[4] must first initiate contact with a Counselor within 45 day of the date of the alleged discrimination or adverse action. 29 C.F.R. § 1614.105(a)(1); Sommatino v. United States, 255 F.3d 704, 707-08 (9th Cir. 2001). If the matter is not resolved, the employee may submit a formal administrative compliant. See 29 C.F.R. § 1614.106. The Ninth Circuit has held that "although the regulatory pre-filing exhaustion requirement at § 1614.105 'does not carry the full weight of statutory authority' and is not a jurisdictional prerequisite for suit in federal court, we have consistently held that, absent waiver, estoppel, or equitable tolling, 'failure to comply with this regulation [is] . . . fatal to a federal employee's discrimination claim' in federal court." Kraus v. Presidio Trust Facilities Division/Residential Mgmt. Branch, 572 F.3d 1039, 1043 (9th Cir. 2009) (quoting Lyons v. England, 307 F.3d 1092, 1105 (9th Cir. 2002)).

"The mere receipt and investigation of a complaint does not waive objection to a complainant's failure to comply with the original filing time limit when the later

---

[4] In 1972, Title VII of the Civil Rights Act of 1964 was amended to extend coverage to federal employees. Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch, 572 F.3d 1039, 1043 (9th Cir. 2009).

1  investigation does not result in an administrative finding of discrimination." Boyd v.
2  United States Postal Service, 752 F.2d 410, 413 (9th Cir. 1985); but see Girard v.
3  Rubin, 62 F.3d 1244, 1247 (9th Cir. 1995) (agency expressly rejected complaint for
4  untimeliness). "An agency waives a timeliness objection by making an express finding
5  that the complaint was timely or failing to appeal an EEOC determination of
6  timeliness." Rose v. Mabus, No. 08cv1471 BTM(BLM), 2010 WL 4918973, at *1
7  (S.D. Cal. Nov. 29, 2010) (quoting Bruce v. United States Dept. of Justice, 314 F.3d
8  71, 74 (2d Cir. 2002)). Equating the acceptance and investigation of a complaint with
9  the waiver of any argument that the case is time-barred would "vitiate any incentive for
10 [government] agencies to investigate and voluntarily remedy instances of
11 discrimination, lest the agencies risk forfeiting a valid defense to a potential suit."
12 Belgrave v. Pena, 254 F.3d 384, 387 (2d Cir. 2001) (internal quotation marks omitted).
13       Here, Plaintiff initially contacted an EEO counselor on May 6, 2009 on the issue
14 of her non-promotion. (Dkt. No. 1, Compl. ¶ 10; Dkt. No. 21-2, NOL, Ex. 2.)
15 Therefore, since she was required to make contact with a Counselor within 45 days of
16 an alleged discriminatory action, any incidents prior to March 22, 2009 are time barred.
17 While the agency accepted and investigated the incidents prior to March 22, 2009,
18 (Dkt. No. 21-2, Ex. 6; Dkt. No. 23-2, Zielinkski Decl., Ex. C), there is no indication
19 that the Navy expressly waived the timeliness requirement. On September 29, 2011,
20 the ALJ issued an order in favor of Defendant concluding that Plaintiff failed to
21 establish a prima facie case of a discriminatory hostile work environment based on
22 gender and retaliatory discrimination. (Dkt. No. 21-2, NOL, Ex. 21.) Accordingly, the
23 Court concludes the Plaintiff failed to timely exhaust all incidents prior to March 22,
24 2009 and those incidents are time barred. Therefore, the only timely allegations are the
25 failure to promote and review of computer and Internet usage.
26 **C.    Continuing Violations**
27       In support of her argument that the time barred incidents are timely, Plaintiff
28 further contends that the continuing violation theory saves her untimely claims.

1  Without distinguishing between discrete and non-discrete acts, she asserts that the facts
2  alleged are "one, long continuous pattern of unlawful behavior towards her," (Dkt. No.
3  23 at 16), that began at the start of her employment and continued until the end of her
4  employment.[5]  Defendant opposes.
5       In <u>Morgan</u>, the United States Supreme Court addressed the continuing violation
6  theory in the context of Title VII claims. <u>Nat'l R.R. Passneger Corp. v. Morgan</u>, 536
7  U.S. 101, 122 (2002).  The Court distinguished between two types of discrimination:
8  "discrete discriminatory acts" and "hostile environment claims." <u>Id.</u> at 115.  Discrete
9  retaliatory or discriminatory acts occur on the day it happens and is a one time
10 occurrence. <u>Id.</u> at 110-11.  Examples are "failure to promote, denial of transfer, or
11 refusal to hire." <u>Id.</u> at 114.  "[D]iscrete discriminatory acts are not actionable if time
12 barred, even when they are related to acts alleged in timely filed charges.  Each discrete
13 discriminatory act starts a new clock for filing charges alleging that act." <u>Id.</u> at 113.
14 However, an employee may use prior acts that are time barred as background evidence
15 to support a timely claim. <u>Id.</u>
16      On the other hand, a hostile work environment claim will not be time barred "so
17 long as all acts which constitute the claim are part of the same unlawful employment
18 practice and at least one act falls within the time period." <u>Id.</u> at 122.  A hostile work
19 environment involves repeated conduct and occurs over a series of days or years and
20 a single act of harassment may not be actionable on its own. <u>Id.</u> at 115.  A hostile work
21 environment is comprised of "separate acts that collectively constitute one 'unlawful
22 employment practice.'" <u>Id.</u> at 117.
23      Here, the two timely acts are failure to promote, and review of Plaintiff's
24 computer and Internet usage.  First, failure to promote is a discrete act and cannot be
25 part of a continuing violation theory. <u>See id.</u> at 114.  While Defendant argues that
26 review of computer usage is a discrete act, it is has not provided legal authority and the
27
28     [5]Without legal authority, Plaintiff contends that whether the conduct constitutes a continuous pattern of behavior is a matter for the jury.  The Court disagrees.

- 8 -     [12cv1657-GPB(MDD)]

Court has not found any cases that computer usage review is a discrete act or a non-discrete act. Therefore, the Court concludes that Defendant has not demonstrated that computer usage review is a discrete act.

If computer usage review is a non-discrete act, all incidents before March 22, 2009 that are time barred are now timely because all acts which constitute the claim are part of the same unlawful employment practice if at least one act, review of computer usage, falls within the time period. Id. at 117. Therefore, the Court concludes that the computer usage review and all incidents alleged in the complaint, even those that are time barred, fall within the regulatory time period for a hostile work environment cause of action.

**D.    Constructive Discharge**

Defendant argues that Plaintiff has waived her constructive discharge claim alleged in the complaint because it was abandoned in the administrative process. While Plaintiff asserts that she raised her constructive termination claim in an EEO formal complaint of discrimination, she does not address her abandonment of that claim.

On August 18, 2011, Plaintiff filed her third EEO administrative complaint alleging constructive discharge. (Dkt. No. 21-2, NOL, Ex. 18.) However, on October 19, 2011, Plaintiff withdrew the claim. (Id., Exs. 17, 20.) Therefore, Defendant did not investigate or issue a decision on it.

Before filing an action in federal court under Title VII, a party must exhaust administrative remedies. B.K.B., 276 F.3d at 1099. The exhaustion requirement does not bar a plaintiff from seeking judicial relief for incidents or claims of discrimination not raised in the original EEOC charge if the new incidents or claims are "like or reasonably related to the allegation of the EEOC charge." Deppe v. United Airlines, 217 F3d 1262, 1267 (9th Cir. 2000); Sommatino, 255 F.3d at 709. However, if a claimant abandons a claim during the administrative process, it prevents exhaustion and precludes judicial review. Vinieratos v. United States, 939 F.2d 762, 771-72 (9th

1  Cir. 1991); Greenlaw v. Garrett, 59 F.3d 994, 1000 (9th Cir. 1995). "[A]n
2  administrative exhaustion rule is meaningless if claimants may . . . abandon the
3  administrative process and yet still be heard in the federal courts." Vinieratos, 939
4  F.2d at 772.

5        In Wright, the plaintiff filed his first charge with the EEOC alleging race
6  discrimination. Wright v. United Airlines, Inc., 1 F.3d 1248, at *1 (9th Cir. 1993)
7  (unpublished). He then filed a second charge with the EEOC alleging he had been
8  wrongly denied sick time and unfairly disciplined for having filed the first EEOC
9  complaint. Id. He then voluntarily withdrew his first complaint and the EEOC
10 terminated its investigation and made no final determination. Id. The EEOC issued
11 a final decision on the second charge. Id. The plaintiff filed a complaint in district
12 court which included allegations from the first EEOC charge which he had withdrawn,
13 and other chargers not raised before the EEOC and not covered by the right-to-sue
14 letter. Id. at *2. The Court held that plaintiff could not litigate those charges which he
15 withdrew but could litigate claims of retaliation that are "reasonably related" to the
16 allegations in the second EEOC. Id.

17       Similarly, in this case, Plaintiff abandoned her constructive discharge claim on
18 October 19, 2011. (See Dkt. No. 21-2, NOL, Ex. 18.) Therefore, she may not seek
19 judicial review on that claim. Accordingly, the Court GRANTS Defendant's motion
20 for summary judgment on the constructive discharge claim.

21 **E.     Hostile Work Environment**

22       Defendant maintains that Plaintiff cannot demonstrate she was subject to
23 continuous harassment at work because even if the computer review is considered a
24 non-discrete event, the acts alleged are not sufficiently severe or pervasive to alter the
25 conditions of her employment. Plaintiff alleges that she was subject to a higher level
26 of scrutiny than her male co-workers which created a hostile work environment.

27       Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment
28 practice for an employer . . . to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a) (1); Vance v. Ball State Univ., 133 S. Ct. 2434, 2440 (2013). Title VII guarantees employees "the right to work in an environment free from discriminatory intimidation, ridicule, and insult." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986). Not all conduct may be described as harassment that affects a "term, condition, or privilege" of employment under Title VII. Id. at 67. A "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not affect the conditions of employment to sufficiently significant degree to violate Title VII." Id.

A prima facie case for a hostile work environment under Title VII requires a plaintiff to show (1) she was subjected to verbal or physical conduct because of her race or gender; (2) the conduct was unwelcome; and (3) the conduct "was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." Nichols v. Azteca Rest. Enter., Inc., 256 F.3d 864, 871 (9th Cir. 2010. The court looks to the totality of the circumstances. Harris, 510 U.S. at 23. Factors that may be considered "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. She must show that the harassment occurred because of her sex. Nichols, 256 F.3d at 872.

A plaintiff must demonstrate that her "workplace [was] permeated with discriminatory intimidation . . . that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). The working environment must be both subjectively and objectively abusive. Id. Plaintiff must show that a "reasonable person" would find the work environment "hostile or abusive" and that Plaintiff in fact found it so. Westendorf v. W. Coast Contractors of Nev., Inc., 712 F.3d 417, 421 (9th

Cir. 2013).

In making a determination as to whether a hostile work environment is severe or pervasive, the Ninth Circuit looks to facts in other cases. See Vasquez v. County of Los Angeles, 349 F.3d 634, 643 (9th Cir. 2003) ("When compared to other hostile work environment cases, the events in this case are not severe or pervasive enough to violate Title VII"). In Vasquez, a deputy probation officer at a county youth detention center alleged race discrimination, hostile work environment and retaliation. Id. at 638. The district judge granted summary judgment for the County and the Ninth Circuit affirmed. Id. The court held that the supervisor's conduct was insufficient to create an actionable hostile work environment. Id. The supervisor stated that Vasquez has "a typical Hispanic macho attitude" and that he should consider transferring to the field because "hispanics do good in the field." Id. at 643. Moreover, Vazquez alleged that he was yelled at in front of others and that his supervisor made continual, false complaints about him which consisted of two memos written a year apart from each other. Id. The court held that these incidents were not severe or pervasive enough to constitute a hostile work environment, Id. at 642.

In Sanchez v. City of Santa Ana, 936 F.2d 1027 (9th Cir. 1990), the court dismissed plaintiff's hostile work environment claim because no reasonable jury could have found a hostile work environment despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino. Id. at 1031, 1036.

In a sexual harassment case, the Ninth Circuit held in Kortan v. California Youth Authority, 217 F.3d 1104 (9th Cir. 2000), that there was no hostile work environment when a supervisor called female employees "castrating bitches," "Madonnas," or "Regina" on several occasions in plaintiff's presence; the supervisor called the plaintiff "Medea"; the plaintiff complained about other difficulties with that supervisor; and the

plaintiff received letters at home from the supervisor. Id. at 1107. The court held that, while the supervisor's language was offensive, his conduct was not severe or pervasive enough to unreasonably interfere with the plaintiff's employment. Id. at 1111.

In a gender discrimination case, a court held that the following evidence created a question of fact whether the supervisor's conduct was severe and pervasive:

> (1) disregarded her complaints of hostility in the work place; (2) yelled at her; (3) threatened to file charges against her if she continued to complain; (4) failed and refused to do anything when she requested help to move a 150–pound package, and instead "clenched up his fists, put them behind his back, and stepped right into my face, gritted his teeth, and said 'you get to deliver it, don't you?'"; (5) failed to report or otherwise resolve a physical assault on Ms. Matson prior to Ms. Matson reporting it to a separate manager; (6) assigned her a less desirable package car instead of a van where all the men had the more desirable vans; (7) humiliated her at a termination meeting at which seven men at the meeting accused her of lying and stealing time (while not also charging a male co-worker with stealing time for the same incident) and at least one yelled at her; and (8) openly mocked her in front of her co-workers.

Matson v. United Parcel Serv., Inc., No. C10-1528 RAJ, 2013 WL 587571, at *3 (W.D. Wash. Feb. 13, 2013) (citations omitted).

In another case, the court held there was a question of fact whether plaintiff quit due to the pervasive harassment in her job as a firefighter. Brophy v. Day & Zimmerman Hawthorne Corp., 799 F. Supp. 2d 1185, 1195 (D. Nev. July 5, 2011). Examples of a hostile and pervasive environment consisted of the following:

> On January 22, 2007, Assistant Chiefs Dee Lawrence and Douglas Homestead made platoon changes stating that two women serving on the same platoon would make for a very weak platoon. Homestead reportedly said that one woman was bad enough, but two women would be worse. On May 22, 2007, Homestead became aware that Brophy and Armstead were in the bathroom at the same time. He ordered them not to be in the bathroom at the same time because most female firefighters are "lesbians" and that's how it would be perceived. On July 5, 2007, Captain Rich Irwin assigned Brophy and Armstead to different areas while patrolling a fireworks exhibit, because he would not let two women be in the same location. In August 2007, Brophy was doing a building inspection with Captain Rich Irvin who reportedly said "women do not belong in the fire service and have no right to be here." On March 2, 2008, firefighter Jorge (George) Jensen said women should not be allowed to drive fire apparatus or have a license "because they are dumb and put their makeup on while driving." While handing out a "firefighter of the quarter" award to a male firefighter, Homestead said no woman had ever received the

> award, that women are not worthy of an award, and that "most are totally useless." On numerous occasions, firefighters and supervisors made derogatory comments regarding women including: (1) "no woman of his would ever work in a man's profession"; (2) women cannot and should not be allowed to drive the fire apparatus; (3) women are not good for the fire service and are not competent like men; (4) Assistant Chief Lawrence told others that he was going to show Armstead "what white meat tasted like"; and (5) women can't compete with the men in the fire service because they don't do as good a job.

Id. at 1194-95 (citations omitted).

In this case, Plaintiff alleges a hostile work environment based on the following incidents: 1) confrontation by the Department Head and Assistant Department Head because of her Union grievance and was denied AWS on June 25, 2008; 2) assignment to Reprographics on June 25, 2009; 3) upon returning to Facilities Management in February 2, 2009, informed she was going to work as a dispatcher for the Transportation Office; 4) forced to share an office with four other employees as a dispatcher while all the male GS-0802 Engineering Technicians had their own offices; 5) informed by Vidaurri, on October 8, 2009 that her credit card had been put on hold, and on October 15, 2009, that her computer and internet usage would be reviewed to determine the amount of effort directed toward the DMLSS purchasing program.

The Court concludes that the incidents alleged by Plaintiff do not objectively rise to the level of severity and pervasiveness to subject Defendant to a Title VII violation. Plaintiff was not subject to foul language or to verbal discriminatory comments based on her gender. She was not humiliated or yelled at in front of others. She was not subject to unrelenting barrage of verbal abuse designed to humiliate and anger her, see Nichols, 256 F.2d at 872, and not subject to verbal abuse "because of" Plaintiff's gender. Id. at 874. She was also not disciplined due to the computer review and investigation.

As to the June 25, 2008 confrontation between Plaintiff and the Department Head and Assistant Department head, she states that due to her grievance, she was called into their office and questioned about the grievance and she was informed that she would be working in Reprographics until her grievance was resolved. (Dkt. No.

21-2, NOL, Ex. 8 at USA0041.) Then she was instructed to remove all her personal belongings from the office. (Id.) This alleged confrontation does not amount to a severe or pervasive hostile environment.

While Plaintiff states the work environment caused her stress, insomnia and nightmares requiring numerous days of sick leave and numerous doctor visits, (Dkt. No. 21-2, NOL, Ex. 8 at USA 0040), a reasonable person would not find the work environment "hostile or abusive." The Court concludes that the incidents alleged are not so severe or pervasive to unreasonably interfere or alter Plaintiff's employment. See Nichols, 256 F.3d at 871. In fact, she states that she received "exceptional ratings" on her performance appraisals from Reprographics and from Transportation. (Dkt. No. 21-2, NOL, Ex. 8, Higdon Aff. at USA 0046; Dkt. No. 1, Compl. ¶ 9.)

While Defendant may have improperly assigned Plaintiff to work in other departments not within her grade level, this does not rise to a violation of Title VII. Accordingly, the Court GRANTS Defendant's motion for summary judgment on the hostile work environment cause of action based on the incidents alleged above.

**F.     Retaliation**

    **a.     Burden of Proof in Retaliation Cases**

In a Title VII retaliation case, the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 793 (1973) applies. Surrell v. California Water Serv., Co., 518 F.3d 1097, 1105-06 (9th Cir. 2008).

To establish a prima facie case under McDonnell Douglas, a plaintiff must demonstrate that: (1) she belonged to a protected class; (2) she was qualified for her job; (3) she was subjected to an adverse employment action; and (4) similarly situated employees not in her protected class received more favorable treatment. Moran v. Selig, 447 F.3d 748, 753 (9th Cir. 2006); see also McDonnell Douglas Corp, 411 U.S. at 802. Next, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The defendant must set forth, through the

introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. Id. at 253-254. If Defendant is successful, the burden shifts back to the plaintiff to demonstrate that the proferred reason was not the true reason for the employment decision. Id. at 256.

### b. Analysis

Defendant argues that the retaliation claim fails because the one incident, review of computer and Internet usage, which is the only claim that occurred after she made her initial EEO contact, is too minor to constitute retaliation. Plaintiff argues her claim should survive summary judgment based on temporal proximity itself.

"It shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To state a prima facie case of retaliation, Plaintiff must show (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal link between the protected activity and the adverse employment action. Davis v. Team Elec. Co., 520 F.3d 1080, 1093–94 (9th Cir. 2008). This provision protects "an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006). Plaintiff must show that a reasonable employee suffered a materially adverse employment action "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. (citations omitted). It does not protect employees from petty slights, minor annoyances and lack of good manners. Id. at 68. An adverse employment action is a "tangible change in working conditions that produces a material employment disadvantage" which generally include a termination of employment, a demotion, a material loss of benefits, or a significantly diminished material

Case 3:12-cv-01657-GPC-MDD Document 27 Filed 03/11/14 PageID.339 Page 17 of 18

1 responsibilities. Haddon v. Executive Resident at White House, 313 F.3d 1352, 1363
2 (Fed. Cir. 2002) (quoting Gagnon v. Sprint Corp., 284 F.3d 839, 850 (8 Cir. 2002)).
3 An investigation by an employer, without disciplinary action, does not constitute an
4 adverse employment action. Id.; Ware v. Billington, 344 F. Supp. 2d 63, 76
5 (D.D.C.2004) ("although the discipline imposed as a result of an investigation may
6 have a sufficiently adverse effect on plaintiff's employment to be actionable, the mere
7 initiation of the investigation does not")

8 The only act of retaliation that occurred after her EEO Complaint is the computer
9 and Internet usage review which is not disputed by Plaintiff. Plaintiff states that on
10 October 8, 2009, when the Captain at the Naval Hospital signed the notice of
11 acceptance on her EEO complaint, she received an email from Vidaurri stating that her
12 credit card had been put on hold due to numerous mistakes associated with her
13 purchase card folder. (Dkt. No. 21-2, NOL, Ex. 8 at USA 0042; Dkt. No. 23-2,
14 Zielinski Decl., Ex. C, Notice of Amended Acceptance.) Then on October 15, 2009,
15 Vidaurri stated that the Naval Hospital Camp Pendleton Human Resources Office
16 ("HRO") was made aware of her work and that HRO and his department would be
17 investigating her purchasing methodology on her computer. (Id.) Plaintiff was not
18 disciplined after the investigation. (Dkt. No. 21-2, NOL, Ex. 21 at USA 0132.)

19 An investigation and putting a hold on Plaintiff's credit card due to her mistakes
20 in her purchasing duties do not constitute a materially adverse employment action.
21 Therefore, Plaintiff has failed to demonstrate a prima facie case of retaliation and the
22 Court GRANTS Defendant's motion for summary judgment on the retaliation claim.
23 / / / /
24 / / / /
25 / / / /
26 / / / /
27 / / / /
28 / / / /

**Conclusion**

Based on the above, the Court GRANTS Defendant's motion for partial summary judgment. The Court **vacates** the hearing set for March 14, 2014.

IT IS SO ORDERED.

DATED: March 11, 2014

HON. GONZALO P. CURIEL
United States District Judge